UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES LYONS, et al., ) ) ) Plaintiffs ) ) v. ) ) ) JAMES ELDRIDGE, et al., ) ) ) Defendants. ) ) ) | Case No. 22-cv-11199-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                           **January 26, 2023**

**I.      Introduction**

Plaintiffs James Lyons, Evelyn Curley, Henry Barbaro, Christine Doherty and David Lunger (together "Plaintiffs") bring this suit against Defendants James Eldridge ("Eldridge"), Jonathan Paz ("Paz"), Wesley McEnany ("McEnany") and Maura Healey ("Healey") alleging violation of 42 U.S.C. § 1985(3) (Count I), seeking declaratory and equitable relief for violations of 52 U.S.C. §§ 10101(b), 10307(b) (Count II) and violation of 42 U.S.C. § 1986 (Count III).  D. 1.  Defendant Healey has moved to dismiss Plaintiffs' complaint for failure to state a claim for which relief should be granted, Fed. R. Civ. P. 12(b)(6).  D. 9.  Defendants Paz and McEnany also moved to dismiss Plaintiffs' complaint for failure to serve Defendants under Fed. R. Civ. P. 12(b)(5), for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), and for failure to state a claim for which relief should be granted under Fed. R. Civ. P. 12(b)(6).  D. 21.  For the

reasons discussed below, the Court ALLOWS Healey's motion to dismiss, D. 9, and the Court ALLOWS Paz and McEnany's motion to dismiss, D. 21.

## II.     Standard of Review

### A.     Motion to Dismiss for Lack of Subject-Matter Jurisdiction under 12(b)(1)

Under Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction. "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (quoting Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)) (internal quotation marks omitted). When confronted with such a motion, "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." Aversa v. United States, 99 F.3d 1200, 1209–10 (1st Cir. 1996) (citing Murphy, 45 F.3d at 522). The Court, however, may widen its gaze and look beyond the pleadings to determine jurisdiction. Martínez-Rivera v. Puerto Rico, 812 F.3d 69, 74 (1st Cir. 2016). Further, "[w]hen faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." Ne. Erectors Ass'n v. Sec'y of Lab., 62 F.3d 37, 39 (1st Cir. 1995). Most relevantly for our purposes here, "[t]he First Circuit has observed that it is appropriate to consider mootness challenges as challenges to a court's subject-matter jurisdiction, and that '[t]he proper vehicle for challenging a court's subject-matter jurisdiction is Federal Rule of Civil Procedure 12(b)(1).'" Trafford v. City of Westbrook, 669 F. Supp. 2d 133, 140 (D. Me. 2009) (second alteration in original) (quoting Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362–63 (1st Cir. 2001)).

### B.     Motion to Dismiss for Insufficient Service of Process under 12(b)(5)

It is well established that "that a judgment rendered in the absence of personal jurisdiction is a nullity." Vázquez-Robles v. CommoLoCo, Inc., 757 F.3d 1, 4 (1st Cir. 2014). "The existence

of such jurisdiction normally depends on legally sufficient service of process." Id. "[Al]hough personal jurisdiction and service of process are distinguishable, they are inextricably intertwined, since service of process constitutes the vehicle by which the court obtains jurisdiction." United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1085 (1st Cir. 1992).

"When a defendant seasonably challenges the adequacy of service, the plaintiff has the burden of showing that service was proper." Vázquez-Robles, 757 F.3d at 4. "A return of service generally serves as *prima facie* evidence that service was validly performed." Blair v. City of Worcester, 522 F.3d 105, 111 (1st Cir. 2008). A defendant, however, may provide "rebuttal evidence to refute any presumption of valid service." Id. at 111–12.

### C. Motion to Dismiss for Failure to State a Claim under 12(b)(6)

"To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain 'sufficient factual matter' to state a claim for relief that is actionable as a matter of law and 'plausible on its face.'" MIT Federal Credit Union v. Cordisco, 470 F. Supp. 3d 81, 84 (D. Mass. 2020) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).

**III.     Factual Background**

The following factual allegations in Plaintiffs' complaint, D. 1, are accepted as true for the purposes of resolving the motions to dismiss. Plaintiffs were seeking to repeal An Act Relative to Work and Family Mobility, Mass. St. 2022, c. 81, which allows applicants without proof of lawful presence in Massachusetts to be eligible for a Massachusetts license. D. 1 ¶¶ 1–5, 11. On June 15, 2022, Plaintiff Evelyn Curley and others filed a referendum petition seeking to repeal this law by placing it on the November general election ballot. Id. ¶ 12. On June 27, 2022, the Attorney General's Office approved the referendum for signature collection. Id. ¶ 13. Plaintiffs were required to collect 1.5 percent of the votes cast in the previous governor's race, amounting to 40,120 signatures. Id. ¶ 14. Plaintiffs James Lyons, Henry Barbaro, Christine Doherty and David Lunger were involved in the signature gathering effort. Id. ¶¶ 1, 3–5. To collect signatures, Plaintiffs set up tables outside Cabela's, Market Basket stores and other locations across the Commonwealth. Id. ¶ 18.

Plaintiffs allege that they met "organized resistance" in their effort to collect signatures. Id. ¶¶ 21–32. As alleged, this organized effort, a "[d]ecline to [s]ign" campaign, harassed and assaulted potential signatories, physically blocked access to the signature tables and, on at least one occasion, ripped signature petitions in half. Id. ¶¶ 22–24, 28. Plaintiffs allege that protestors' efforts "shut down" signature-gathering in Berlin, Tewksbury, Waltham, Haverhill, Plymouth, Hudson and other locations. Id. ¶ 25. Plaintiffs allege that the protestors' behavior forced several volunteers to decline to be part of signature gathering efforts. Id. ¶ 26.

Plaintiffs allege that Defendants Eldridge and Paz were "leaders" of the effort to protest their signature gathering. Id. ¶¶ 35, 38, 39. Eldridge "appeared on several occasions to obstruct, harass, and intimidate voters and signature gatherers." Id. ¶ 35. Eldridge stood three feet from the

4

signature table to obstruct potential signatories from approaching to sign the petition.  Id. ¶ 36.  Paz's "group" "formed a picket line" about five feet in front of the signature table.  Id. ¶ 39.  McEnany also "appeared on at least one occasion" to prevent Plaintiffs from gathering signatures by allegedly blocking and preventing voters from access to the signature collection efforts.  Id. ¶ 34.  Plaintiffs also allege that several other unnamed people have organized efforts to obstruct access to the signature collection.  Id. ¶ 44.

Plaintiffs assert that despite making "public pleas for protection," Healey, then the Attorney General of Massachusetts, took no "reasonable diligence" to prevent Defendants' conspiracy to stop their signature collection effort.  Id. ¶¶ 64, 66, 69.  On September 9, 2022, the Secretary of the Commonwealth certified that the referendum petition was supported by a sufficient number of signatures.[1]  D. 22 at 3.  Plaintiffs' referendum became question four on the statewide ballot.  Id.

Plaintiffs allege that Eldridge, Paz and McEnany conspired to interfere with their civil rights in violation of 42 U.S.C. § 1985(3) (Count I), as well as 52 U.S.C. §§ 10101(b), 10307(b) (Count II).  Plaintiffs allege that Healey's failure to act to prevent Eldridge, Paz and McEnany's conspiracy amounted to a violation of 42 US.C. § 1986 (Count III).

## IV.   Procedural History

Plaintiffs instituted this action on July 25, 2022.  D. 1.  Healey now moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).  D. 9.  Defendants Paz and McEnany also moved to dismiss Plaintiffs' complaint for failure to serve Defendants under Fed. R. Civ. P. 12(b)(5), for

---

[1] See Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (stating that "[w]hen ruling on a Rule 12(b)(6) motion to dismiss, a district court . . . may also consider documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice") (citation and internal quotation marks omitted).

lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim for which relief should be granted under Fed. R. Civ. P. 12(b)(6).  D. 21.  The Court heard the parties on the pending motions and took the matter under advisement.  D. 25.

## V.     Discussion

### A.     Dismissal Pursuant to Rule 12(b)(1) as to Count II

First, the Court considers Paz and McEnany's motion to dismiss Plaintiffs' voter intimidation claims under 52 U.S.C. §§ 10101(b), 10307(b) for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  "The Voting Rights Act, 52 U.S.C. §§ 10101 et seq., was enacted for the broad remedial purpose to eliminate racial discrimination in voting."  Duran v. Lollis, No. 1:18-cv-01580-DAD-SAB, 2019 WL 691203, at *9 (E.D. Cal. Feb. 19, 2019) (citing, among others, South Carolina v. Katzenbach, 383 U.S. 301, 315 (1966)).  Both statutes prohibit interference with the right to vote by intimidation, threats or coercion.  See 52 U.S.C. §§ 10101(b), 10307(b).  Plaintiffs seek declaratory and equitable relief under 52 U.S.C. §§ 10101(b), 10307(b) from Eldridge, Paz and McEnany's interference with their signature gathering effort.  D. 1 ¶¶ 58–59, 61.

"Because Article III restricts our jurisdiction to 'Cases' and 'Controversies,' . . . a suit becomes moot[] when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."  Harris v. Univ. of Mass. Lowell, 43 F.4th 187, 191 (1st Cir. 2022) (citations and internal quotation marks omitted).  "A party can have no legally cognizable interest in the outcome of a case if the court is not capable of providing any relief which will redress the alleged injury."  Id. (citation and internal quotation marks omitted).  "Thus, if an event occurs while a case is pending . . . that makes it impossible for the court to grant any effectual relief

whatever to a prevailing party, the [action] must be dismissed." Id. (citation and internal quotation marks omitted).

Here, Plaintiffs sought declaratory and equitable relief under 52 U.S.C. §§ 10101(b), 10307(b), to prevent Eldridge, Paz and McEnany from interfering with voters' rights to sign their referendum petition. D. 1 ¶¶ 58–59, 61. Plaintiffs' claims for declaratory and equitable relief are moot because their signature gathering efforts have concluded. D. 22 at 3. Plaintiffs' signature gathering efforts were successful, and on September 9, 2022, the Secretary of the Commonwealth certified that the referendum petition was supported by a sufficient number of signatures to be on the November general election ballot, which it then was for voters. Id. The Court, therefore, can no longer provide the declaratory and equitable relief that Plaintiffs sought in their complaint. D. 1 ¶ 61; see Harris, 43 F.4th at 192.

"Although a claim for damages will keep a case from becoming moot where equitable relief no longer forms the basis of a live controversy," id. (citation and internal quotation marks omitted), it appears that the First Circuit has yet to address whether Plaintiffs can recover damages under 52 U.S.C. § 10101(b) or 52 U.S.C. § 10307(b). 52 U.S.C. § 10101(b) originated from the Civil Rights Act of 1957, 42 U.S.C. § 1971, and 52 U.S.C. § 10307(b) originated from the Voting Rights Act of 1965, 42 U.S.C. § 1973i. See Off. of the L. Revision Counsel, U.S.C., *Editorial Reclassification Title 52*, *United States Code*, https://uscode.house.gov/editorialreclassification/t52/index.html (last visited Jan. 26, 2023). Under a previous version of 52 U.S.C. § 10307(b), 42 U.S.C. § 1973i(b), the Ninth Circuit reasoned that since the statute "does not specify any statutory damage remedies," and that "[t]he legislative history . . . [states] that the sole consequence of the provision for a private cause of action under the Act is to broaden the scope of *equitable* relief, . . . [it] decline[d] to imply any action for damages." See Olagues v. Russoniello, 770 F.2d 791, 804–05

7

(9th Cir. 1985) (emphasis in original) (citation and internal quotation marks omitted).  The current version of the statute, 52 U.S.C. § 10307, still does not specify any statutory damage remedies.

Additionally, several circuits have declined to imply a private right of action under 52 U.S.C. § 10101(b) and 52 U.S.C. § 10307(b), and limited damage actions through 42 U.S.C. § 1983 claims, which Plaintiffs did not bring here.  See, e.g., Jimenez v. Junius Real Estate, No. 16-CV-7483 (VEC) (JLC), 2014 WL 12703184, at *5 (S.D.N.Y. June 7, 2017) (concluding that 52 U.S.C. § 10101(b) does not create a private right of action) (collecting cases); Schwier v. Cox, 340 F.3d 1284, 1297 (11th Cir. 2003) (holding that 42 U.S.C. § 1971, the precursor to 52 U.S.C. § 10101, "may be enforced by a private right of action under § 1983").  The Court, however, does not need to resolve whether Plaintiffs can recover damages under 52 U.S.C. §§ 10101(b), 10307(b), because Plaintiffs' claims otherwise still fail under Fed. R. Civ. P. 12(b)(5) and Fed. R. Civ. P. 12(b)(6).

**B.    Dismissal Pursuant to Rules 12(b)(5) as to Counts I and II**

Second, the Court considers Paz and McEnany's motion to dismiss for failure to serve Defendants under Fed. R. Civ. P. 12(b)(5).  See Mukherjee v. Blake, No. 12-11381-FDS, 2013 WL 2299521, at *2 (D. Mass. May 24, 2013) (stating that "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of process must be satisfied") (citing Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987)).  When sufficiency of process is challenged under Fed. R. Civ. P. 12(b)(5), Plaintiffs have the burden of proving proper service.  Vázquez-Robles, 757 F.3d at 4.

Federal Rule of Civil Procedure 4(m) provides that Plaintiffs must effectuate service on Defendants "within [ninety] days after the complaint is filed."  Local Rule 4.1(a) also permits dismissal if after moving for enlargement of this time period for service, "good cause has not been

shown" for such enlargement. Plaintiffs filed their complaint on July 25, 2022. D. 1. There is no certification of service of process on the docket, there is no proffer that service has been made and Plaintiffs have not moved for enlargement of time and failed to respond to Defendants' challenge of service of process. See D. 22 at 19. Since Plaintiffs failed to serve Defendants within 90 days or show "good cause" for enlargement of this time frame, the Court dismisses Plaintiffs' claims against Paz and McEnany pursuant to Fed. R. Civ. P. 12(b)(5).

### C. Failure to State a Claim Under Rule 12(b)(6) as to Counts I-III

#### 1. As to Counts I and III

Even if there were not the aforementioned grounds to dismiss the complaint against Paz and McEnany, the complaint against them and Healey fails to state a claim upon which relief may be granted.

Plaintiffs assert a claim against Healey under 42 U.S.C. § 1986 (Count III) and a claim against Eldridge, Paz and McEnany for conspiracy under 42 U.S.C. § 1985(3) (Count I). D. 1 ¶¶ 62–69. Section 1986 creates a right of action against those "who knew of any of the wrongful acts described in [42 U.S.C.] § 1985, had the power to prevent them, and failed to do so." See Rua v. Glodis, No. 10-40251-FDS, 2012 WL 2244817, at *5 (D. Mass. June 14, 2012)). A prerequisite for a claim under 42 U.S.C. § 1986 is the existence of conduct actionable under section 1985. Oberg v. City of Taunton, 972 F. Supp. 2d 174, 201 (D. Mass. 2013) (citation and internal quotation marks omitted); see Hahn v. Sargent, 523 F.2d 461, 469–70 (1st Cir. 1975) (stating that plaintiff's "claim under § 1986 falls upon the rejection of his § 1985 claims"). "Section 1985(3) provides a cause of action for conspiracy to deprive or interfere with federally protected rights." Rodriguez-Garcia v. Davila, 904 F.2d 90, 99 (1st Cir. 1990). To state a claim under 42 U.S.C. § 1985(3), Plaintiffs must first "allege a conspiracy; second, [they] must allege a conspiratorial

purpose to deprive the plaintiff of equal protection of the laws; third, [they] must identify an overt act in furtherance of the conspiracy; and finally [they] must show either injury to person or property, or a deprivation of a constitutionally protected right." Parker v. Landry, 935 F.3d 9, 17–18 (1st Cir. 2019) (citation and internal quotation marks omitted). "It has [also] long been established that a claim under § 1985(3) requires 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" Perez-Sanchez v. Public Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).

Plaintiffs have failed to set forth any facts from which a discriminatory or class-based animus reasonably may be inferred. To the extent Plaintiffs argue that they were targeted due to their political affiliation, the First Circuit expressly "decline[d] to extend § 1985(3)'s protection" on this basis. See Perez-Sanchez, 531 F.3d at 109 ("hold[ing] that § 1985(3) provides no remedy for animus on the basis of political beliefs"). Additionally, "[i]t is conclusively established . . . that conspiracy to infringe upon First Amendment rights is actionable under section 1985(3) only if it is demonstrated that a state actor is involved, or if the purpose of the conspiracy is to 'influence the activity of the State.'" Davila, 904 F.2d at 99 (quoting United Brotherhood of Carpenters and Joiners of America, Local 610 v. Scott, 463 U.S. 825, 830 (1983)). Plaintiffs do not allege any facts that Healey was involved in the underlying conspiracy to deprive Plaintiffs of their rights, but only that they made public pleas that made Healey aware of the conspiracy. D. 1 ¶¶ 64, 66, 69.

Even assuming *arguendo* Plaintiffs plausibly alleged discriminatory or class-based animus or that the purpose of the conspiracy by private actors to infringe First Amendment rights was to influence the activity of the State, see Friends of Falun Gong v. Pac. Cultural Enter., 288 F. Supp.

2d 273, 281 (E.D.N.Y. 2004), aff'd, 109 Fed. Appx. 442 (2d Cir. 2004), Plaintiffs also fail to allege a conspiracy between Eldridge, Paz and McEnany.  Pleading a section 1985(3) conspiracy requires at least minimal factual support of the existence of a conspiracy.  See Davila, 904 F.2d at 99–100.  Plaintiffs assert that on separate dates, Eldridge and Paz led groups to protest Plaintiffs' signature collection. D. 1 ¶¶ 35, 39. McEnany also "appeared on at least one occasion" to prevent Plaintiffs from gathering signatures.  Id. ¶ 34.  Plaintiffs, however, fail to allege any facts that Defendants made an agreement to stop Plaintiffs from collecting signatures. Plaintiffs "must plausibly allege facts indicating an agreement among the conspirators to deprive the plaintiff of [their] civil rights." Parker, 935 F.3d at 18. Since Plaintiffs fail to allege facts of any agreement, they fail to state a plausible claim under section 1985(3). See id. (stating that "[a] complaint containing only vague and conclusory allegations of a conspiracy fails to state a plausible claim under section 1985(3)"). Accordingly, Counts I fails to state a § 1985(3) claim against Eldridge, Paz and McEnany and Count III fails to state a § 1986 claim against Healey.[2]

    2. *As to Count II*

Plaintiffs also bring a claim under 52 U.S.C. § 10307(b), and 52 U.S.C. § 10101(b) against Eldridge, Paz and McEnany (Count II). D. 1 ¶¶ 58–61. As previously noted, both statutes prohibit interreference with the right to vote by intimidation, threats or coercion. See 52 U.S.C. §§ 10307(b), 10101(b). Even assuming that Plaintiffs have standing to assert such a claim,[3] Plaintiffs

---

[2] Given the Court's conclusion as to Count III on this ground, the Court need not reach Healey's argument that immunity also warrants dismissal.

[3] It is not clear that Plaintiffs do have such standing here to assert the claims under Count II where, even as alleged, they were not deprived of their own right to sign the initiative petition and the only "injury" that they allege is that Defendants' efforts deterred unnamed potential signatories from signing the initiative petition. D. 1 ¶¶ 18, 21–32, 34–36, 42, 47–48; see Sylvia's Haven, Inc. v. Mass. Dev. Fin. Agency, 397 F. Supp. 2d 202, 220 (D. Mass. 2005) (noting that parties "'must assert [their] own legal rights and interests,'" without "rest[ing] [their] claim to

have failed to establish that the allegations here constitute interference with the right to vote. Plaintiffs failed to provide the Court with any caselaw that attempting to sign an initiative petition constitutes voting.  See D. 1; D. 13.  Under 52 U.S.C. § 10101(e), the term "vote," "includes all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting, casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast with respect to candidates for public office and propositions for which votes are received in an election."  Under a previous version of 52 U.S.C. § 10101(e), 42 U.S.C. § 1973*l*(c)(1), the Tenth and Eleventh Circuits analyzed whether petitions circulated to collect signatures for proposed amendments to state constitutions constituted "voting."  Delgado v. Smith, 861 F.2d 1489, 1493 (11th Cir. 1988) (citing Montero v. Meyer, 861 F.2d 603, 606–09 (10th Cir. 1988)).  The previous version of the statute contained a similar definition of the term "vote."  Montero, 861 F.2d at 607 (quoting 42 U.S.C. § 1973*l*(c)(1)).  Under this definition, the courts determined that voting "involve[d] actions pertinent to registering one's choice at . . . election[s]," and that therefore, "matters which are 'prerequisite to voting,' must be interpreted to be those which relate directly to the casting of a ballot," not to the circulation of initiative petitions.  Montero, 861 F.2d at 607; see Delgado, 861 F.2d at 1493.  The difference between the former version, 42 U.S.C. § 1973*l*(c)(1), and the current version of the statute, 52 U.S.C. § 10101(e), is the omission of " in any primary, special, or general election" after "all action necessary to make a vote effective."  Id.  The current version, however, still defines voting as "all action necessary to make a vote effective" including but not limited to registration or other actions required as a prerequisite for voting, casting a ballot and having that ballot counted and included

---

relief on the legal rights or interests of third parties'") (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)).

"with respect to candidates for public office and propositions for which votes are received in an election." 52 U.S.C. § 10101(e). Accordingly, even those matters "which are prerequisite to voting," still refer to one's choice at an election, not to a signature on an initiative petition. 52 U.S.C. § 10101(e). "Implicit in both the statutory and the common definitions of the concept of voting is the presence of a choice to be made." Montero, 861 F.2d at 607. When voting, "[o]ne ordinarily . . . pick[s] one candidate or another, or one votes for or against the adoption of an initiated measure." Id. Initiative petitions do not present signatories with a choice between candidates or a vote for or against the adoption of an initiated measure. See D. 1 ¶¶ 12 *et seq.* (alleging that Plaintiffs were collecting signatures to get referendum petition on the ballot). "Thus, applying the concept of voting to a process which provides no choice defies the commonly accepted usage of the term." Montero, 861 F.2d at 607.

For at least these reasons, Plaintiffs have failed to allege plausibly conduct that constitutes interference with the right to vote under 52 U.S.C. §§ 10101(b), 10307(b) (Count II).

**VI.    Conclusion**

For the reasons discussed below, the Court ALLOWS Healey's motion to dismiss, D. 9, and the Court ALLOWS Paz and McEnany's motion to dismiss, D. 21.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge